# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| TIMOTHY VANDERBERG,<br><br>        Plaintiff,<br><br>vs.<br><br>PETCO ANIMAL SUPPLIES STORES, INC., d/b/a Pet Food Warehouse, d/b/a Petco,<br><br>        Defendant. | No. C16-4019-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

## I. INTRODUCTION

This case is before me on two motions by defendant Petco Animal Supplies Stores, Inc. (Petco). The first is a motion (Doc. No. 25) for summary judgment and the second is a motion (Doc. No. 31) for sanctions against plaintiff Timothy Vanderberg (Vanderberg). Vanderberg has filed a resistance to each motion (Doc. Nos. 27, 32) and Petco has filed replies (Doc. Nos. 30, 33). The parties have requested oral argument, but I find that it is not necessary. *See* N.D. Ia. L.R. 7(c).

## II. RELEVANT FACTS

The following facts are undisputed except where otherwise noted:

On June 7, 2015, Vanderberg was working as a semi-truck driver for J.B. Hunt. That day, he was scheduled to make a delivery to a Petco store in Sioux City, Iowa. Vanderberg had previously made approximately ten deliveries to this store. Each time Vanderberg made a delivery to this store, he operated the store's hydraulic lift without incident. The hydraulic lift is raised and lowered using a control valve handle that causes the automatic folding ramp to hinge down to a horizontal position as the ramp raises until it meets with the edge of the automatic folding ramp overlapping the back of a trailer.

When fully opened and elevated, the hydraulic lift allows a driver to roll a pallet jack onto the platform. The driver then uses the control valve handle to lower the platform while the automatic folding ramp retracts and hinges up to a vertical position and the platform lowers to ground level.[1]

Prior to Vanderberg's delivery on June 7, 2015, the assistant store manager of the Petco store, William Hinkel, conducted a walk-around inspection of the hydraulic lift and saw no visible signs of any operating issues. He plugged the hydraulic lift into the electrical outlet and moved it up and down several times using the control valve handle. Each time he let go of the control valve handle, the handle remained in the neutral position and the ramp remained where Hinkel had positioned it.

When Vanderberg arrived for the delivery, he unloaded approximately six pallets from the trailer into the store, using the hydraulic lift without incident. Vanderberg did not look behind himself when stepping onto the hydraulic lift from the truck after unloading the first two pallets because he instinctively knew where he was inside the trailer in relation to the lift and felt he did not need to look. The lift operated normally and the control valve handle remained in the neutral position when released. In preparing to load the seventh pallet, Vanderberg maneuvered the pallet jack onto the lift while the lift was at ground level. He then raised the hydraulic lift using the control valve handle to meet the back of the trailer and pushed the pallet jack into the trailer. He walked approximately 16 feet into the trailer to load the next pallet. After loading the pallet, he walked backwards, facing away from the hydraulic lift. He did not look behind him at any time before stepping back with his right leg onto what he thought was the automatic folding ramp, where he had last positioned the lift. Vanderberg fell over the raised edge of the automatic folding ramp and to the bottom of the partially-retracted lift. He stood

---

[1] Vanderberg objects to the word "driver" being used in the context of operating the control valve handle. He notes that Petco's delivery and unloading policy requires that Petco store personnel lower the lift to the ground once a driver has placed a pallet on the dock lift. Nonetheless, Vanderberg admits that each time he made a delivery to this Petco store, he operated the hydraulic lift using the control valve handle without any problems.

2

up and saw that the edge of the automatic folding ramp was raised approximately 12 to 18 inches above the trailer floor where he had last positioned it. He examined the hydraulic lift and concluded it was functioning properly, so he finished unloading the trailer. His only visible injuries consisted of slight horizontal linear scratches on the back of his calves and a swollen ankle that caused him to limp. He experienced pain on the right side of his body, but was able to finish unloading the trailer.

Vanderberg then continued on to a Petco store in Sioux Falls, South Dakota, approximately 90 minutes away. There, he unloaded the remainder of the trailer. He then slept for 10 to 12 hours in the sleeping compartment of his truck and drove to Joliet, Illinois, the next day. Vanderberg worked for two and a half more days loading, driving and unloading one and possibly two trailers of pallets at other Petco locations before he complained of pain to his supervisor.

Vanderberg saw a physician on June 12, 2015. He complained of right knee pain, right foot pain and pain in both shoulders. He underwent physical therapy during June and July of 2015 to address these symptoms. On July 20 or 21, 2015, diagnostic testing revealed a severe rotator cuff tear in the right shoulder, a severe bicep tear on the right arm and a severe rotator cuff tear and a bony chip on the left shoulder. All treatment related to these injuries was covered by workers' compensation. In December 2015, Vanderberg complained of pain in his left knee, for which he received surgery. This procedure was not covered by workers' compensation.

At the time of his June 7, 2015, accident, Vanderberg was considered obese. His prior medical history consists of a surgical repair to his right knee in 2010 after suffering a workplace injury and a history of arthritis and degenerative joint disease in both knees.

### III. PROCEDURAL HISTORY

Vanderberg commenced this action on March 8, 2016, by filing a two-count complaint (Doc. No. 2) against Petco. Vanderberg invoked the court's diversity jurisdiction and asserted claims of negligence (Count I) and premises liability (Count II).

Petco filed an answer and third party complaint (Doc. No. 4) on April 11, 2016, in which it denied liability and raised certain defenses.[2]  Pursuant to an amended scheduling order (Doc. No. 22), Vanderberg's deadline for disclosing expert witnesses expired October 31, 2016, and discovery closed on February 17, 2017.  Trial is scheduled to begin August 21, 2017.  Doc. No. 10.

## IV.    ANALYSIS

### A.    *Motion for Sanctions*

Petco argues I should impose sanctions on Vanderberg for failing to disclose expert witnesses timely pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).  As noted above, Vanderberg's expert disclosure deadline was October 31, 2016, and discovery closed on February 17, 2017.  Petco filed its motion for summary judgment on March 17, 2017, based primarily on a lack of causation evidence.  In his resistance, Vanderberg indicates that he relies on medical records from Timothy Petsche, M.D., his treating orthopedic surgeon,[3] and opinions expressed by Nikhil Verma, M.D., in recently-

---

[2] Petco's third party complaint was directed against Superior Handling Equipment, LLC, which allegedly manufactured and sold the hydraulic lift at issue.  Doc. No. 4 at 3-8.  The parties later filed a stipulated dismissal of the third party complaint.  Doc. No. 24.

[3] Those medical records contain a letter dated April 26, 2016, stating in relevant part:

> Mr. Vanderberg was in my office yesterday and we discussed the fact that his left knee has been hurting him ever since his work injury and since his right knee arthroscopy, his left knee has significantly worsened.
>
> During this time, he was getting in and out of chairs and going up and down stairs almost predominantly completely with the left leg and this greatly worsened his left knee symptoms.  It is my opinion that the right knee arthroscopy significantly exacerbated his left knee condition and therefore, further treatment of his left knee is medically necessary and related to the treatment of his right knee as well as the original injury.

Doc. No. 27-3 at 12.

4

produced independent medical examination (IME) reports,[4] to raise a jury question on the issue of causation. Petco states it had no knowledge that Vanderberg intended to have these physicians testify as to causation. Petco notes that in January 2017, it asked Vanderberg whether he intended to present any expert evidence. Vanderberg's counsel replied as follows on January 26, 2017:

> We do not have any retained experts on liability or damages. We expect the treating physicians and surgeons will testify as to their diagnosis treatment, prognosis, functional impairment and future medical care for Tim Vanderberg. If it is Petco's position that treating physicians must be identified through expert witness certification, please advise and we can take the matter up with the court.

Doc. No. 30-3 at 4.[5] Even in this reply, Vanderberg's counsel did not state that the physicians would testify as to causation.[6]

### 1.  *Applicable Standards*

Federal Rule of Civil Procedure 26(a)(2) states as follows, in relevant part:

(2)  *Disclosure of Expert Testimony*.

    (A)  *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

---

[4] These IME reports were produced and disclosed three days after Petco filed its motion for summary judgment.

[5] It appears that Petco did not respond. For reasons I will discuss below, I find no significance in the lack of a response. In essence, Vanderberg's counsel asked Petco if the Rules of Procedure regarding expert disclosures mean what they say. Moreover, Vanderberg's expert disclosure deadline had expired nearly three months before Vanderberg's counsel wrote this letter.

[6] In November 2016, Petco disclosed an expert medical witness who opined that Vanderberg's injuries were due to a combination of age-related factors, genetics and anthropomorphic factors rather than the June 7, 2015, accident. Doc. No. 25-3 at 4-18. Even then, Vanderberg did not disclose a rebuttal expert or indicate that his treating physicians would testify as to causation.

(B)  *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

   (i)   a complete statement of all opinions the witness will express and the basis and reasons for them;

   (ii)   the facts or data considered by the witness in forming them;

   (iii)   any exhibits that will be used to summarize or support them;

   (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;

   (v)   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

   (vi)   a statement of the compensation to be paid for the study and testimony in the case.

(C)  *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

   (i)   the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

   (ii)   a summary of the facts and opinions to which the witness is expected to testify.

(D)  *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. . . .

Fed. R. Civ. P. 26(a)(2). Thus, if a witness is "retained or specially employed to provide expert testimony in the case," the party relying on that witness must provide a report in compliance with Rule 26(a)(2)(B). If expert testimony will be offered by a witness who is not "retained or specially employed to provide expert testimony in the case," the party relying on that witness must provide a disclosure in compliance with Rule 26(a)(2)(C).

### 2. *The Parties' Positions*

Here, there seems to be no dispute that neither Dr. Petsche nor Dr. Verma has been "retained or specially employed to provide expert testimony in the case." Thus, the written report requirements of Rule 26(a)(2)(B) do not apply. However, Petco contends that the causation evidence Vanderberg intends to present through Dr. Petsche and Dr. Verma is expert opinion evidence that should have been disclosed pursuant to Rule 26(a)(2)(C). If Petco is correct, then on or before October 31, 2016, Vanderberg should have disclosed both (1) the subject matter on which each witness is expected to present expert evidence and (2) a summary of the facts and opinions to which the witness is expected to testify. Vanderberg did not do so.[7] Indeed, as of April 11, 2017, when Petco filed a reply in support of its motion for sanctions, Vanderberg still had not provided a Rule 26(a)(2)(C) disclosure with regard to either physician. Doc. No. 33 at 1.

Petco requests the following as a sanction: (1) preclude Vanderberg from relying on the IME reports in resistance to Petco's motion for summary judgment, at any hearings and at trial, (2) preclude Vanderberg from using the testimony of the IME doctor at trial, (3) limit Vanderberg's treating physicians' testimony to facts not associated with causation or any other area of expert testimony that was not properly disclosed and (4) award Petco $5,512.00 in attorney fees. In response, Vanderberg first argues that Petco did not attempt to resolve this discovery dispute informally before seeking court

---

[7] Vanderberg did disclose Dr. Petsche as a potential witness, but did not disclose that he would offer expert testimony.

intervention as required by Rule 37. *See* Fed. R. Civ. P. 37(a)(1) ("[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain in without court action").[8] Vanderberg also notes that attorney fees are not recoverable if the movant filed its Rule 37 motion before attempting to confer in good faith with opposing counsel. *See* Fed. R. Civ. P. 37(a)(5)(A)(i).

Vanderberg's counsel, Paul D. Lundberg, has submitted an affidavit stating that he did not know about the IME reports until March 20, 2017, when he received an email message from Vanderberg's workers' compensation attorney. He forwarded the reports to counsel for Petco that same day. Mr. Lundberg also references his January 26, 2017, letter in which he advised Petco's counsel that the treating physicians and surgeons would testify as to their "diagnosis treatment, prognosis, functional impairment and future medical care" for Vanderberg. He argues he was not required to use the specific word "causation" in order for them to testify to such. Moreover, he notes that Dr. Petsche, the orthopedic surgeon, referenced causation in his operative notes, which Petco has had in its possession since October 2016. Finally, Vanderberg states that Petco made no attempt to schedule Dr. Petsche's deposition after he disclosed him as a testifying witness.

With respect to the untimely disclosure of the IME reports, Petco argues that Vanderberg should have sought to continue the discovery deadline if he knew there were outstanding reports that would not be available prior to the deadline. Regardless of the reason for the late disclosure, Petco argues it is at a disadvantage because it did not have the opportunity to depose either Dr. Petsche or Dr. Verma about their causation opinions.

---

[8] Our local rules also require counsel to meet and confer prior to filing a motion relating to discovery. *See* Local Rule 37(a) ("No motion relating to discovery may be filed unless counsel for the moving party electronically attaches to the motion a declaration attesting to the following: (1) Counsel, in good faith, has conferred personally with counsel for the opposing party in an attempt to resolve or narrow by agreement the issues raised by the motion; (2) The lawyers have been unable to reach an agreement; and (3) The nature of the disagreement."). Alternatively, counsel may submit a written declaration stating that a personal conference with opposing counsel was impossible and describe the efforts undertaken to schedule the conference. Petco did neither.

### *3.  Discussion*

With regard to Dr. Petsche, it appears Vanderberg intends to present two types of evidence: (1) evidence of what Vanderberg told him about the cause of his injuries and (2) opinion evidence regarding whether Vanderberg's left knee injury is causally-related to the work accident.  With regard to Vanderberg's own statements, Dr. Petsche wrote as follows in his Operative Note dated August 7, 2015:

> He injured both shoulders and his right knee, injuries for which I am seeing him.  These injuries occurred on 6/7/15.  He was lifting 200 pounds of dog food out of a truck, working for Petco and the scissor-lift malfunctioned automatically flipping up the gate.  His foot got caught and he hung on the pallet jack panel to prevent falling but the jerk injured both of his shoulders.  He has had symptoms in his knee with pain ever since and pain in his shoulders.  Physical exam of his knee was suspicious for a medical meniscal tear.  MRI scan confirmed the diagnosis.

Doc. No. 27-3 at 20.  In a later Operative Report, dated March 16, 2016, Dr. Petsche similarly stated:

> He injured himself on 6/7/15.  He was lifting 200 pounds of dog food out of the truck and the scissor-lift malfunctioned, automatically flipping up the gate.  As a result, Tim's foot became caught and he hung onto the pallet jack panel to prevent falling, but the sudden 'jerk' injured both of his shoulders.

*Id.* at 13.  With regard to the left knee injury, Dr. Petsche wrote a letter dated April 26, 2016, stating, "It is my opinion that the right knee arthroscopy significantly exacerbated his left knee condition and therefore, further treatment of his left knee is medically necessary and related to the treatment of his right knee as well as the original injury." *Id.* at 12.  This letter and Dr. Petsche's records were provided to Petco on October 27, 2016.  *See* Doc. No. 32-2 at 8.  They were not produced in response to an interrogatory or request for production specifically requesting causation evidence, but in response to other interrogatories and requests regarding persons with knowledge and the documents Vanderberg intends to rely on to support his claims.  *See* Doc. No. 30-3 at 6, 12-13, 20-21 and Doc. No. 32-2 at 4, 8 and 11.

9

As for Dr. Verma, he conducted independent medical examinations to evaluate whether Vanderberg's symptoms were causally-related to the June 7, 2015, accident. He first saw Vanderberg on July 27, 2016, and made findings that some of Vanderberg's injuries were caused by that accident. *See* Doc. No. 27-3 at 52. He issued subsequent reports in early 2017. His report of February 17, 2017, states, "[s]houlder conditions are causally related to the June 7, 2015, work injury." *Id.* at 53. His report of March 10, 2017, states that with regard to Vanderberg's right knee, "at this point, I see no causally related ongoing condition to his right knee related to the June 7, 2015, work injury." *Id*. at 51. The February and March IME reports were produced to Petco on March 20, 2017, the day Vanderberg's counsel received them from Vanderberg's workers' compensation attorney.

Petco argues that Vanderberg should be precluded from relying on evidence from Dr. Petsche and Dr. Verma to establish causation because causation opinions are of an expert nature and, therefore, should have been disclosed pursuant to Rule 26(a)(2)(C). An expert disclosure is required only if the witness will be presenting evidence that falls under Federal Rules of Evidence 702, 703 or 705.[9] *See* Fed. R. Civ. P. 26(a)(2)(A). The law in this circuit is clear that a treating physician's opinions as to causation are, in fact, expert opinions that must be disclosed pursuant to Rule 26(a)(2). *See Brooks v. Union Pacific R. Co.*, 620 F.3d 896, 899-900 (8th Cir. 2010). In *Brooks*, which is almost precisely on point, the Eighth Circuit Court of Appeals stated:

> Brooks argues that the district court should have received Dr. Garlapati's affidavit and causation opinion regardless of any expert disclosures because Dr. Garlapati was his treating physician. Brooks asserts that Dr. Garlapati may testify from his personal experience in treating Brooks without being considered an expert witness, citing *Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999). *Davoll* is a disability discrimination case in which a treating physician explained the plaintiff's

---

[9] Rule 702 governs testimony by expert witnesses. Rule 703 describes the permissible bases of an expert's opinion testimony. Rule 705 describes when an expert must disclose facts or data underlying his or her expert opinion.

injuries but did not testify concerning causation because causation was not an issue. 194 F.3d at 1138–39. *Davoll* holds that a treating physician may testify as a lay witness when describing a medical condition. *Id*. at 1139. Brooks sought to use Dr. Garlapati not merely to explain Brooks's medical condition—he also sought to use Dr. Garlapati to explain causation of Brooks's condition.

"A treating physician's expert opinion on causation is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for purposes of litigation." *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207 (8th Cir. 2000) (affirming the district court's decision to strike the treating physician's opinion and to grant summary judgment in favor of the defendants due to the lack of evidence of causation); *see also Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 899 (8th Cir. 2008) (affirming summary judgment following the exclusion of a treating physician's causation opinion); *Claar [v. Burlington N.R.R. Co.]*, 29 F.3d [499, 504 (9th Cir. 1994)] (holding that, in order to avoid summary judgment, the plaintiffs in a FELA action were required to produce expert testimony that exposure to chemicals played a part in causing their injuries). We hold that Dr. Garlapati's causation opinion brought his testimony within Rule 702 and Rule 26(a)(2).

Because Brooks failed to comply with the requirements of Rule 26(a)(2), the district court properly excluded Dr. Garlapati's causation opinion.

*Id*. (footnote omitted).

*Brooks* is controlling, and compels a finding that any causation opinions provided by Dr. Petsche or Dr. Verma are expert opinions that are subject to Rule 26(a)(2)'s disclosure requirements. Under Rule 26(a)(2)(C), Vanderberg was required to provide a timely disclosure of both (1) the subject matter on which each witness is expected to present expert evidence and (2) a summary of the facts and opinions to which the witness is expected to testify. He did not do so. As such, Vanderberg violated his expert-disclosure obligations.

### 4. *The Appropriate Sanction*

Inadequate expert disclosures are governed by Rule 37(c), which provides:

(1) If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). In determining the appropriate remedy, I must apply a balancing test by considering the following factors: (1) the reason for noncompliance; (2) the surprise and prejudice to the opposing party; (3) the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial and (4) the importance of the information or testimony. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (citing *Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 1995)).

With regard to the reason for noncompliance, Vanderberg states that Dr. Verma's IME reports were disclosed as soon as his counsel received them. While this is accurate with regard to reports from Dr. Verma dated February 17, 2017, and March 10, 2017, Dr. Verma's first IME occurred on July 27, 2016 – three months before Vanderberg's expert disclosure deadline. *See* Doc. No. 27-3 at 52. The report from that IME is not part of the record. However, in a subsequent report Dr. Verma stated that he made findings during the first IME that some of Vanderberg's injuries were caused by the June 7, 2016, accident. *Id.* Thus, by the end of July, 2016, Vanderberg was on notice that Dr. Verma was a potential witness on the issue of causation. Vanderberg could have, and should have, provided a Rule 26(a)(2)(C) disclosure concerning Dr. Verma by the

October 31, 2016, deadline. He could have then supplemented that disclosure in light of Dr. Verma's subsequent IME reports. Vanderberg has provided no valid excuse for noncompliance with regard to Dr. Verma.

The situation is no better with regard to Dr. Petsche. While Vanderberg disclosed him as a potential trial witness, he did not provide a timely (or even untimely) Rule 26(a)(2)(C) disclosure for Dr. Petsche. Nor has he offered a reason for noncompliance. This factor weighs in favor of excluding the opinion evidence.

The second factor I must consider is the surprise and prejudice to the opposing party. As mentioned above, Vanderberg disclosed his reliance on this evidence as causation evidence only in resisting Petco's motion for summary judgment. His late disclosure at this stage significantly prejudices Petco as trial is two months away and the discovery deadline expired four months ago. This factor also weighs in favor of excluding the opinion evidence.

Next, I must consider the extent to which allowing this information or testimony would disrupt the order and efficiency of the trial. If I were to allow Vanderberg to present expert opinion testimony from Dr. Verma and Dr. Petsche as to causation, fairness would dictate that I give Petco the opportunity to depose them and, potentially, to seek responsive opinion testimony of its own. With trial approaching, it is almost certain that a continuance would be necessary. Thus, permitting Vanderberg to proceed with improperly-disclosed opinion evidence from Dr. Verma and Dr. Petsche would significantly disrupt the order and efficiency of trial. This factor weighs in favor of excluding the evidence.

The final factor is the importance of the information. There is no doubt that the proposed opinion testimony is highly important. Indeed, and as I will explain in the following section of this ruling, the absence of opinion evidence concerning causation requires dismissal of Vanderberg's claims. This is the only factor that weighs in favor of a sanction other than exclusion.

Having considered all of the relevant factors, I conclude that exclusion is the appropriate sanction. Thus, Vanderberg is precluded from using Dr. Verma's opinion testimony, reports or records to establish causation. Vanderberg is also precluded from using Dr. Petsche's opinion testimony to establish causation.[10]

## B.   *Motion for Summary Judgment*

Vanderberg's claims against Petco consist of the following:

- Count I – Negligence (based on failure to properly maintain its hydraulic lift, for failure to properly inspect the hydraulic lift for mechanical defects and failure to warn that the hydraulic lift was mechanically defective).[11]

- Count II – Premises Liability[12]

---

[10] Petco's failure to provide a declaration certifying compliance with Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37(a) is troubling. However, under the circumstances present here, it is apparent that pre-motion efforts to resolve this dispute would have been futile. By the time Vanderberg notified Petco of his intent to have Dr. Petsche and Dr. Verma provide causation opinions at trial, discovery was already closed and Petco had already filed its motion for summary judgment. Moreover, as discussed above, the record reflects some communications between counsel about causation opinion evidence before Petco filed its motion. Nonetheless, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A)(i), I find that Petco is not entitled to an award of attorney fees and expenses incurred in making the motion.

[11] The elements of negligence are (1) existence of a duty, (2) breach of that duty, (3) causation and (4) damages. *See Vossoughi v. Polaschek*, 859 N.W.2d 643, 654 n.6 (Iowa 2015).

[12] Premises liability requires a plaintiff to prove:

1. The defendant knew or in the exercise of reasonable care should have known of a condition on the premises and that it involved an unreasonable risk of injury to a person in the plaintiff's position.
2. The defendant knew or in the exercise of reasonable care should have known:
    a. The plaintiff would not discover the condition, or
    b. The plaintiff would not realize the condition presented an unreasonable risk of injury, or
    c. The plaintiff would not protect [himself] from the condition.
3. The defendant was negligent in a specific way
4. The negligence was a cause of the plaintiff's damage
5. The nature and extent of damage

Doc. No. 2. Petco argues it is entitled to summary judgment on both counts for the following reasons:

1. Plaintiff cannot prevail on the issue of proximate cause[13] in either Count I or Count II because plaintiff failed to disclose any expert testimony that the June 7, 2015 fall was the cause of the injuries he was diagnosed with in July and December 2015.

2. Plaintiff cannot establish that Petco had a duty to protect plaintiff from or warn plaintiff about a hazard of which Petco was unaware, and of which it could not have reasonably known.

3. Plaintiff's own conduct operates as an intervening and superseding cause that forecloses the possibility of plaintiff carrying his burden on the issue of proximate cause.

Doc. No. 25.

### 1. Applicable Standards

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical"

---

Iowa Civil Jury Instruction 900.1 (2016) (citing *e.g., Koenig v. Koenig*, 766 N.W.2d 635, 645-46 (Iowa 2009)).

[13] Petco appears to be referring to actual cause, or cause-in-fact, rather than proximate or legal cause.

15

under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light

most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### 2. *Is There a Genuine Issue of Material Fact as to Causation?*

As noted above, causation is an essential element of both of Vanderberg's claims. Petco argues that Vanderberg cannot demonstrate a genuine issue of material fact on the issue of causation without expert testimony that his injuries, which were diagnosed in July and December 2015, were caused by the June 7, 2015, accident. Petco notes that Vanderberg's medical records indicate significant preexisting degenerative joint disease in his knees, a prior right knee meniscus repair in 2010 and underlying medical conditions, such as obesity. Petco's expert witness has opined that these conditions, not the events of June 7, 2015, caused the injuries at issue. Doc. No. 25-3 at 4-18. Because Vanderberg has failed to designate an expert medical witness on the issue of causation, Petco argues he has failed to generate a jury question on this issue.

"Causation has two components: '(1) the defendant's conduct must have *in fact caused* the plaintiff's damages (generally a factual inquiry) and (2) the policy of the law must require the defendant to be *legally responsible* for the injury (generally a legal question).'" *Berte v. Bode*, 692 N.W.2d 368, 372 (Iowa 2005) (quoting *Gerst v. Marshall*, 549 N.W.2d 810, 815 (Iowa 1996)). The "but for" test determines "whether the defendant's conduct was a cause in fact of the plaintiff's harm." *Id.*

> Under that test, 'the defendant's conduct is a cause in fact of the plaintiff's harm, if, but-for the defendant's conduct, that harm would not have occurred. The but-for test also implies a negative. If the plaintiff would have suffered the same harm had the defendant not acted negligently, the defendant's conduct is not a cause in fact of the harm.'

*Id.* "Proximate cause or legal cause, the second element of causation, determines the appropriate scope of a negligent defendant's liability." *Yates v. Iowa West Racing Ass'n*, 721 N.W.2d 762, 774 (Iowa 2006).

To establish actual causation, a plaintiff must prove that his or her theory of causation is "reasonably probable – not merely possible, and more probable than any other hypothesis based on such evidence." *Doe v. Central Iowa Health System*, 766 N.W.2d 787, 793 (Iowa 2009) (quoting *Ramberg v. Morgan*, 218 N.W.2d 492, 497 (Iowa 1928)). Petco argues Vanderberg cannot establish actual causation because he has not disclosed any expert testimony on the issue and expert testimony is required. The Iowa Supreme Court has stated, "[w]hen the causal connection between the tortfeasor's actions and the plaintiff's injury is within the knowledge and experience of an ordinary layperson, the plaintiff does not need expert testimony to create a jury question on causation." *Doe*, 766 N.W.2d at 793. The Court has also explained that "[m]edical testimony regarding whether an accident caused an injury is not within the knowledge and experience of ordinary laypersons." *Yates*, 721 N.W.2d at 744.

> To determine whether a subject is outside the general comprehension of a layperson, the Court must engage in a case-by-case, common-sense determination of 'whether the untrained layman would be qualified to determine intelligently . . . the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*Anderson v. Bristol, Inc.*, 936 F. Supp. 2d 1039, 1066 (S.D. Iowa 2013) (citing *M-Z Enters., Inc. v. Hawkeye-Security Ins. Co.*, 318 N.W.2d 408, 414 (Iowa 1982)).

Courts applying Iowa law have found expert testimony necessary in cases involving medical causation. *See Korte v. Mead Johnson & Co.*, 824 F. Supp. 2d 877, 887 (S.D. Iowa 2010) (products liability case involving whether infant formula ingested by plaintiff caused bacterial infection); *Bradshaw v. Iowa Methodist Hospital*, 101 N.W.2d 167, 171 (Iowa 1960) ("Such a matter as the causal connection between plaintiff's fall in defendant hospital and his condition at the time of the operation in

December is not within the knowledge and experience of ordinary laymen"); *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 637 (Iowa 1990) ("[i]n many cases where we have held that a fact question was engendered on the issue of emotional harm and causation, we have relied on the testimony of physicians and psychiatrists."); *Doe*, 766 N.W.2d at 795 (finding plaintiff's conclusory statements in support of his claim insufficient to allow a layperson to determine whether the unauthorized disclosure of his medical records caused his alleged emotional distress). "When there are multiple possible causes to an injury, expert testimony is necessary to determine which cause was the actual and legal cause of the injury." *Anderson*, 936 F. Supp. 2d at 1067.

Here, there are multiple possible causes of Vanderberg's injuries. *See* Doc. No. 25-1 at 9 (noting Vanderberg suffered a prior right knee injury in 2010 for which he underwent surgery, is obese and has degenerative joint disease, which could have contributed to his injuries) (citing Doc. No. 25-3 at 79-81). Given my ruling on the motion for sanctions, Vanderberg has only his own statements (either via his direct testimony or through his doctor's testimony about those statements) regarding the cause of his injuries. Because of Vanderberg's preexisting conditions, and the fact that his injuries were not immediately apparent after the accident, I find that medical expert testimony is required. *See Yates*, 721 N.W.2d at 74 ("[w]ithout medical testimony, a jury [would be] left to resort to conjecture in determining causation."). Because Vanderberg failed to timely designate medical opinion testimony, he has failed to demonstrate that there is sufficient evidence to submit the issue of causation to a jury. As a result, his claims of negligence and premises liability fail as a matter of law.[14]

---

[14] Petco raises two alternative arguments for the entry of summary judgment in its favor: (1) it owed no duty to Vanderberg and (2) Vanderberg's own conduct is an intervening and superseding cause that precludes a finding of liability. Because my conclusion as to causation is dispositive of this case, I need not address these alternative arguments in detail. For the record, however, I note that I have considered both arguments carefully and find that neither would provide an alternative basis for granting Petco's motion.

## V. CONCLUSION

For the reasons stated herein:

1. Petco's motion (Doc. No. 31) for sanctions is **granted**. Vanderberg is precluded from relying on expert evidence as to causation in resistance to Petco's motion for summary judgment or otherwise.

2. Petco's motion (Doc. No. 25) for summary judgment is **granted** with regard to both of Vanderberg's claims. Judgment shall enter against plaintiff and in favor of defendant.

3. Trial, which is currently scheduled to begin August 21, 2017, is **canceled**.

4. Because this order disposes of all pending claims, this case is **closed**.

**IT IS SO ORDERED.**

**DATED** this 22nd day of June, 2017.

_____
Leonard T. Strand, Chief Judge